## Heatherfield Community Association v. Shaw

*Bruce F. Bratton and Victoria S. Lee,* for plaintiff.
*James Morgan,* for defendant.

TURGEON, *J.,* August 11, 1995—Plaintiff Heather-
field Community Association commenced this action

by filing a complaint in equity on January 28, 1993 against its member Marianne D. Shaw. In the complaint, HCA sought a declaration that the defendant was in violation of certain restrictive covenants as the result of defendant's husband parking truck tractors, on the lawn of defendant's property. Plaintiff also sought the entry of a permanent injunction and attorney's fees and costs in seeking to compel defendant to comply with its rules. A non-jury trial was held on May 25, 1995.

## FINDINGS OF FACT

From 1981 until March 1994, defendant Marianne D. Shaw was the owner of a detached single-family home located at 203 Heather Drive in Lower Paxton Township. Defendant's property was located in a planned residential development known as Heatherfield. The property was at all times subject to a declaration of rights, easements, covenants, conditions, affirmative obligations and restrictions applicable to Cluster II of Heatherfield. (Dauphin County Recorder of Deeds, September 8, 1976, misc. book G, vol. 16, page 621.) Plaintiff HCA is a non-profit corporation charged under the Cluster II declaration with maintaining the common areas in Heatherfield as well as enforcing restrictions within the development.

Defendant resided in Heatherfield with her husband Roger Shaw beginning in May 1989. Mr. Shaw is a long-distance truck driver who, up until June of 1991, had parked his truck tractors, the cab portion of a tractor-trailer unit, on the street in the Heatherfield development. On June 3, 1991, Lower Paxton Township passed an ordinance prohibiting the parking of truck tractors and their trailers on public streets in residential areas. Mr. Shaw therefore began parking his truck tractor, and on occasion, two truck tractors, on the side

yard of defendant's property at least 74 times between 1991 and 1993. The vehicle contributed in no way or fashion to the use of the property as a residential dwelling nor was it ever used for residential purposes. Instead, the truck tractor was used for over-the-road commercial trucking activities which provided Mr. Shaw his source of income.

On August 19, 1991, defendant was notified in a letter from HCA that the parking of the truck tractor on her property was in violation of section 4.3(b) of the Cluster II declaration. Defendant was also notified of a $10 per day fine for each day she or her husband violated the Cluster II declaration.

Defendant's husband continued to park the truck tractor on the property and in June of 1992, the Heatherfield Board of Directors increased the fine to $50. With regard to the fines, the testimony indicated that the $10, and later the $50 fine, had been adopted during meetings of the HCA Board of Directors; however, no written minutes of their meetings were maintained and therefore were obviously not provided to the Heatherfield residents.

In March 1994, after commencement of this action, defendant sold her property. Accordingly, HCA's request for declaratory and injunctive relief is moot. HCA still seeks legal fees and costs it has expended from June 1991 through the May 25, 1995 hearing. In addition, although it was not indicated in the complaint, plaintiff seeks $3,180 in fines for the parking violations.

## CONCLUSIONS OF LAW

(I) Defendant has not violated section 4.3(b) of the Cluster II declaration which provides as follows:

*"Temporary structures, vehicles, etc.* Unless otherwise approved by the appropriate subcommittee of the DESIGN REVIEW COMMITTEE, (a) no structure of a temporary character, trailer, tent, shack, garage, barn, or other out-building shall be placed upon CLUSTER II PROPERTY or used on or in connection with any LOT or any LIVING UNIT at any time, either temporarily or permanently, and (b) *no trailer, camper, boat or similar vehicle or equipment shall be permitted to be kept upon Cluster II PROPERTY or used on or in connection with any LOT or LIVING UNIT, unless placed or maintained in an enclosed garage . . . ."* (emphasis added)

Restrictive covenants are not favored in the law because they interfere with the owner's right to free and full enjoyment of the property and are therefore to be strictly construed against enforcement. *Parker v. Hough,* 420 Pa. 7, 11, 215 A.2d 667, 669-70 (1966). A restriction is not to be extended or enlarged by implication and every ambiguity in its language is to be resolved in favor of the owner. *Id.* at 11-12, 215 A.2d at 670. Where language of a deed or restriction is not clear, in order to ascertain the intention of the parties, the language should be interpreted in light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made. *Id.* at 12-13, 215 A.2d at 670. The covenant language in section 4.3 of the Cluster II declaration does not specifically include the word "truck" or "truck tractor."

Initially we note, that in determining the intention of the parties, the apparent purpose of the restriction was clearly to preserve the aesthetic quality of community—prohibited vehicles are allowed on an owner's property only so long as they are placed in an enclosed garage, *i.e.* out of sight. It is beyond dispute that the

large truck tractors which Mr. Shaw parked on his wife's lawn were unsightly. Furthermore, the whole of article IV of the Cluster II declaration, within which section 4.3 is located, is directed toward restricting uses which deter from the aesthetics of the community.[1]

Nevertheless, even though the purpose of the article IV restrictions is clear, the subject matter of the restriction—trailers, campers, boats or similar vehicles—does not clearly encompass restrictions on truck tractors. A truck tractor is not a trailer, a camper or a boat, nor do we believe it is a "similar vehicle." As used in section 4.3, the interpretation of the meaning of "similar vehicle" must be used in the connotation of the rule of ejusdem generis. See, *Parker, supra* at 13, 215 A.2d at 670. In the construction of written instruments, that rule is, "that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are to be held as applying only to persons or things of the same general kind or class as those previously mentioned." *Black's Law Dictionary* 270 (5th Ed. 1983). The specific vehicles prohibited in section 4.3(b), are of a class of recreational-type vehicles and do not include commercially-related vehicles such as truck tractors.

Our last consideration in ascertaining the intention of the parties, is the conditions existing when the restriction was made. In this case, the parking of truck tractors on the public streets of the development was not prohibited when the restrictive covenant was executed and recorded in 1976. Therefore, it would appear

---

1. For instance, article IV prevents the placing of signs for public view on the owners' property, prevents temporary structures from being erected unless they are used in connection with the construction of improvements, prevents the use of any type of antennae, and prevents even the use of clothes-drying lines, among others.

that it was not contemplated that vehicles such as truck tractors would be parked upon the lots of Heatherfield residents and was therefore not foreseen as a subject for restriction. Furthermore, under section 7.2, residents of Cluster II are provided a mechanism to amend the Cluster II declaration, which would clear up any ambiguity in the Cluster II declaration language. Accordingly, there is reasonable and substantial doubt as to the meaning of section 4.3(b) which must be resolved in favor of the free use of the land.

(II) Defendant has violated section 4.1 of the Cluster II declaration, which provides, in pertinent part as follows:

"Use as a single family dwelling.

"(a) Each LOT shall be used as residence for a SINGLE FAMILY and for no other purposes . . . . Such use as a single family residence shall be deemed to include accessory use as a professional office to the extent customarily incidental to primary use as a residence."

It has been held that the parking of a truck tractor on the lot of a residential property does not constitute a residential use nor an accessory use thereto, but is instead a commercial use. *Galliford v. Commonwealth,* 60 Pa. Commw. 175, 430 A.2d 1222 (1981). In *Galliford,* the owners of a property lived with their son in an area zoned residential. The son was a truck driver who parked his truck tractor(s) in his parents' driveway or in the backyard of the property. Such a use was not permitted under the local zoning ordinance but the owners nevertheless argued that since the truck was used for personal transportation to and from a truck terminal, it was an accessory use of a residential use.

The court disagreed stating that the truck "is not only inseparable from its owner's business, it *is* his

business. It is unquestionably commercial in nature, and is neither incidental nor accessory to the residential character of the premises." *Id.* at 178, 430 A.2d at 1224. (emphasis in original) See also, *Cook v. Bensalem Township Zoning Board,* 413 Pa. 175, 196 A.2d 327 (1964); *Taddeo v. Commonwealth,* 49 Pa. Commw. 485, 412 A.2d 212 (1980).

Although *Galliford* dealt with a zoning ordinance and not a restrictive covenant, its application in this case is conclusive since the language of the restriction mimics zoning regulation language. Accordingly, under *Galliford,* the act of Mr. Shaw parking his truck tractors on the lot of defendant's Heatherfield property was commercial in nature and therefore violated section 4.1 of the Cluster II declaration.

(III) Defendant has failed to set forth sufficient evidence that plaintiff HCA waived enforcement of the Cluster II declaration by failing to uniformly enforce its provisions as to other Heatherfield residents who were in alleged violation thereof. In order to abandon or waive a right to enforce a restrictive covenant, the enforcing party must have acquiesced to prior, substantial violations which in fact changed the character of the neighborhood; acquiescence to minor deviations will not create abandonment or waiver. *Rieck v. Virginia Manor Co.,* 251 Pa. Super. 59, 64-65, 380 A.2d 375, 378 (1977). See *Scott v. Owings,* 223 Pa. Super. 481, 485 n.4, 302 A.2d 423, 425 n.4 (1973). It is the burden of the party seeking release from a covenant to prove that the original intention and purpose of the restriction has been altered or destroyed by changed conditions. *Doylestown Township v. Teeling.,* 160 Pa. Commw. 397, 406, 635 A.2d 657, 661 (1993).

Defendant presented no evidence that prior violations of section 4.1 of the Cluster II declaration, to the extent

that others in the community parked commercial vehicles on their lots, have been previously tolerated by HCA.

Defendant has also failed to sufficiently establish that HCA acted with "unclean hands" in enforcing the restrictions in the Cluster II declaration since no evidence of wrongdoing, bad faith or fraudulent activity on the part of HCA has been offered.

(IV) Defendant is liable to plaintiff for reasonable attorney's fees and costs pursuant to section 7.3 of the Cluster II declaration. That section grants HCA the right to enforce, by any proceeding at law or in equity, the restrictions imposed by the Cluster II declaration and further provides that all expenses of enforcement by HCA are chargeable to the owner of the lot violating the declaration. Defendant is therefore responsible for the reasonable fees and costs incurred by HCA in enforcing its rights, under the Cluster II declaration, including attorney's fees. See, *Wrenfield Homeowners Association Inc. v. DeYoung,* 410 Pa. Super. 621, 600 A.2d 960 (1991). A hearing will be set to determine the amount of reasonable fees and costs borne by plaintiff HCA.

(V) Defendant is not liable, however, for the cost of the fines imposed upon her. Section 7.4 provides that any violation of the Cluster II declaration is considered a violation of the declaration of rights, easements, covenants, conditions, affirmative obligations and restrictions applicable to Heatherfield and shall be subject to any and all enforcement procedures set forth in the Heatherfield declaration. (Dauphin County Recorder of Deeds, September 8, 1976, misc. book G, vol. 16, page 559.) Section 3.6 of the Heatherfield declaration provides that the Board of Directors may adopt new rules and regulations by simple majority vote; how-

ever, that section further provides that "a copy of the association rules as they may from time to time be adopted, amended or repealed, shall be mailed or otherwise delivered to each owner." The rules adopted by the board setting fines first at $10 per day and later at $50 per day were not provided to the defendant, therefore, no fines can be imposed upon her.

Accordingly, we enter the following:

### ORDER

And now, August 11, 1995, judgment is hereby entered in favor of the plaintiff. Defendant is directed to pay plaintiff reasonable attorney's fees and costs. A hearing on said fees and costs will be held on October 23, 1995 at 1:30 p.m. in courtroom no. 7, Dauphin County Courthouse.